**LaMONICA HERBST & MANISCALCO, LLP**
*Proposed Special Litigation Counsel to Plaintiff R. Kenneth Barnard, as Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Joseph S. Maniscalco, Esq.
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| | |
| GREGORY N. ALTIERI<br>d/b/a LNA ASSOCIATES LTD., | Case No.: 20-71951 (REG) |
| | |
|        Debtor. | |

------------------------------------------------------------------------x

R. KENNETH BARNARD, Solely as Chapter 7 Trustee of the Estate of Gregory N. Altieri d/b/a LNA Associates LTD.,

       Plaintiff,                    Adv. Pro. No.: 20-    (REG)

       -against-

ALTIERI FAMILY IRREVOCABLE TRUST DATED 09/19/2008, ADRIANA C. CHIARO INDIVIDUALLY AND AS A TRUSTEE OF THE ALTIERI FAMILY IRREVOCABLE TRUST DATED 09/19/2008, ARTHUR ALTIERI INDIVIDUALLY AND AS A TRUSTEE OF THE ALTIERI FAMILY IRREVOCABLE TRUST DATED 09/19/2008, ROSEMARIE ALTIERI, FILOMENA\*, CHASE BANK, N.A., CHARLES SCHWAB & CO., INC., CITIBANK, N.A., LINCOLN INVESTMENT PLANNING, LLC, NATIONAL FINANCIAL SERVICES LLC, PERSHING LLC, JOHN DOE "1" THROUGH "100", JANE DOE "1" THROUGH "100", JOHN DOE CORPORATIONS "1" THROUGH "100", OTHER JOHN DOE ENTITIES "1" THROUGH "100", ALONG WITH ANY OTHER FICTIOUS ENTITY THAT RECEIVED A TRANSFER OF PROPERTY OF THE ESTATE OR IS HOLDING PROPERTY OF THE ESTATE,

       Defendants.

------------------------------------------------------------------------x

## COMPLAINT

R. Kenneth Barnard, Solely as Chapter 7 Trustee ("Plaintiff") of the Estate of Gregory N. Altieri d/b/a LNA Associates Ltd. ("Debtor"), by his undersigned proposed special litigation counsel, as and for his Complaint against the Altieri Family Irrevocable Trust Dated 09/19/2008 ("Altieri Family Trust"), Adriana C. Chiaro individually and as a Trustee of the Altieri Family Irrevocable Trust Dated 09/19/2008 ("Chiaro"), Arthur Altieri individually and as a Trustee of the Altieri Family Irrevocable Trust Dated 09/19/2008 ("A. Altieri"), Rosemarie Altieri ("R. Altieri"), Filomena*[1], Chase Bank, N.A. ("Chase Bank"), Charles Schwab & Co., Inc. ("Charles Schwab"), Citibank, N.A. ("Citibank"), Lincoln Investment Planning, LLC ("Lincoln Investment"), National Financial Services LLC ("National Financial"), Pershing LLC ("Pershing" and, together with the Altieri Family Trust, Chiaro, A. Altieri, R. Altieri, Filomena*, Chase Bank, Charles Schwab, Citibank, Lincoln Investment and National Financial, "Defendants") and John Doe "1" through "100", Jane Doe "1" through "100", John Doe Corporations "1" through "100" and Other John Doe Entities "1" through "100", along with any other fictious entity that received a transfer of property of the estate or is holding property of the estate (collectively, "Unnamed Defendants"), alleges as follows:

### NATURE OF THE ACTION

1.      This adversary proceeding is brought by Plaintiff to, inter alia: (a) obtain an order and judgment granting a preliminary and permanent injunction enjoining the Defendants and the Unnamed Defendants from transferring, hypothecating, encumbering or otherwise disposing of property of the Debtor's bankruptcy estate; (b) a judgment: (i) declaring that, as of the Filing Date (as defined below), any and all assets comprising property of the Debtor's bankruptcy

---

[1]      Defendant Filomena is listed as a first name defendant until such time as the Trustee identifies the

estate being held by the Defendants and/or the Unnamed Defendants, as well as any and all other property purchased, preserved and/or enhanced therefrom by the Defendants and/or the Unnamed Defendants, is property of the Debtor's bankruptcy estate under section 541 of the Bankruptcy Code (as defined below); and (ii) imposing an equitable lien on any such property for the benefit of the creditors of the Debtor's bankruptcy estate; and (c) obtain an order and judgment against the Defendants and the Unnamed Defendants directing the immediate turnover of any and all assets constituting property of the Debtor's bankruptcy estate under section 541 of the Bankruptcy Code.

## JURISDICTION AND VENUE

2.      This action arises under a pending Chapter 7 bankruptcy case.

3.      This Court has jurisdiction over this action under 28 U.S.C. §§ 157 and 1334, and Bankruptcy Rules 6009 and 7001.

4.      This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (b)(2)(E), (b)(2)(H) and (b)(2)(O).

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

6.      Plaintiff consents to the entry of final orders and judgments by the Bankruptcy Judge presiding over this adversary proceeding if it is determined that the Bankruptcy Judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

7.      The statutory predicates for the relief sought herein include sections 105, 323, 541, 542 and 544 of Title 11 of the United States Code ("Bankruptcy Code"), Rules 6009, 7001 and 7065 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and New York common law.

---

defendant's last name.

## THE PARTIES

8.      The Plaintiff is the Chapter 7 Trustee of the Debtor's bankruptcy estate.

9.      The Plaintiff is authorized to file this action under section 323 of the Bankruptcy Code and Bankruptcy Rule 6009.

10.     Upon information and belief, defendant Altieri Family Trust is an irrevocable trust that was formed on or about September 19, 2008.

11.     Upon information and belief, the Debtor is a trustee of the Altieri Family Trust.

12.     Upon information and belief, defendant Chiaro is an individual residing in Huntington Station, New York.

13.     Upon information and belief, defendant Chiaro is the Debtor's sister.

14.     Upon information and belief, defendant Chiaro is a trustee of the Altieri Family Trust.

15.     Upon information and belief, defendant A. Altieri is an individual residing in Huntington, New York.

16.     Upon information and belief, defendant A. Altieri is the Debtor's brother.

17.     Upon information and belief, defendant A. Altieri is a trustee of the Altieri Family Trust.

18.     Upon information and belief, defendant Rosemarie Altieri is an individual residing in Melville, New York.

19.     Upon information and belief, defendant Filomena* is an individual and the Debtor's aunt.

20.    Upon information and belief, defendant Chase Bank is a consumer banking company with a place of business at 115 Broadhollow Road, Melville, New York 11747, and is a stakeholder in the within action.

21.    Upon information and belief, defendant Charles Schwab is a financial services company with a place of business at 1900 Northern Boulevard, Suite E, Manhasset, New York 11030, and is a stakeholder in the within action.

22.    Upon information and belief, defendant Citibank is a consumer banking company with a place of business at 425 Broadhollow Road, Melville, New York 11747, and is a stakeholder in the within action.

23.    Upon information and belief, defendant Lincoln Investment is a financial services company with a place of business at 601 Office Center Drive, Suite 300, Port Washington, New York 19034, and is a stakeholder in the within action.

24.    Upon information and belief, defendant National Financial is a financial services company with a place of business at 245 Summer Street, Boston, Massachusetts 02210, and is a stakeholder in the within action.

25.    Upon information and belief, defendant Pershing is a financial services company with a place of business at One Pershing Plaza, Jersey City, New Jersey 07399, and is a stakeholder in the within action.

26.    The Unnamed Defendants are those currently unknown beneficiaries, and/or additional or subsequent transferees of the Transfers (as defined below), individuals or entities holding property of the Debtor's bankruptcy estate, as well as any other individual or entity who conspired with one or more of the Defendants to defraud Debtor's creditors.

## **ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF**

**A.**    **The Involuntary Filing, Order for Relief and Appointment of the Trustee**

27.    On April 28, 2020 ("Filing Date"), an involuntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code ("Involuntary Petition") was filed against the Debtor by Kris McDermott Consulting Corp., SCIT Realty Corp., and James Duffy (collectively, "Petitioning Creditors") in the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court").

28.    On April 29, 2020, the Clerk of the Court issued a Summons to Debtor in Involuntary Case ("Summons").

29.    On April 29, 2020, the Involuntary Petition and Summons were served on, inter alia, the Debtor.

30.    By motion dated May 1, 2020, the Petitioning Creditors sought entry of an Order pursuant to section 303(g) of the Bankruptcy Code and Bankruptcy Rule 2001 for the immediate appointment of an interim trustee for the Debtor.

31.    On May 6, 2020, the Bankruptcy Court entered an Order: (a) granting relief under Chapter 7 of the Bankruptcy Code against the Debtor; and (b) directing the appointment of a Chapter 7 Trustee for the Debtor.

32.    On May 6, 2020, Plaintiff was appointed as Chapter 7 Trustee of the Debtor's bankruptcy estate.

**B.**    **The Debtor's Pre-Petition Business Operations**

33.    Upon information and belief, for a period of at least four (4) years, the Debtor engaged in a business whereby he solicited investors to purchase lots of jewelry ("Jewelry Lot Sheets").

34.     According to the Petitioning Creditors, at all relevant times, the Debtor was assisted by an individual named Dale Schultz ("Schultz").

35.     According to the Petitioning Creditors, Schultz primarily communicated with investors through text messages and phone calls.

36.     Upon information and belief, Schultz was the Debtor's primary representative to solicit investors.

37.     To induce investors to provide money to the Debtor, according to the Petitioning Creditors, the Debtor and/or Schultz represented to investors that the Debtor was a formidable gemologist.

38.     To induce investors to provide money to the Debtor, according to the Petitioning Creditors, the Debtor and/or Schultz represented to investors that the Jewelry Lot Sheets provided a great return on investments.

39.     To induce investors to provide money to the Debtor, according to the Petitioning Creditors, the Debtor and/or Schultz represented to investors that they would be repaid with interest at a specific future point in time.

40.     To induce investors to provide money to the Debtor, according to the Petitioning Creditors, the Debtor and/or Schultz represented to investors that the investments were endless.

41.     To induce investors to provide money to the Debtor, according to the Petitioning Creditors, the Debtor and/or Schultz represented to investors that their money was safe.

42.     To induce investors to provide money to the Debtor, according to the Petitioning Creditors, the Debtor and/or Schultz represented to investors that even their family members invested in the Jewelry Lot Sheets.

43.    To induce investors to provide money to the Debtor, according to the Petitioning Creditors, the Debtor and/or Schultz represented to investors that they personally invested in the Jewelry Lot Sheets.

44.    Upon information and belief, the Debtor and Schultz were engaged in a fraudulent scheme and artifice to defraud investors and obtain money from those investors by means of materially false and fraudulent pretenses, representations and properties involving the purchase and sale of Jewelry Lot Sheets.

45.    As part of the scheme to defraud, the Debtor and Schultz solicited at least fifty (50) investors who provided approximately fifty million dollars ($50,000,000) to purchase Jewelry Lot Sheets.

46.    Upon information and belief, commencing in or around September 2019, the Debtor began losing money in his business operations, and the likelihood of generating sufficient profits from the Jewelry Lot Sheets to repay all of the investors ceased.

47.    Upon information and belief, the Debtor utilized money invested by new investors or reinvested money to keep the scheme going, to pay certain investors and to enrich himself and others, including Schultz, until such time that the repayment of the earlier investors overwhelmed the flow of new investments and caused the collapse of the scheme.

48.    The payments to investors constituted intentional misrepresentations of fact regarding the underlying investments and were an integral and essential part of the fraud.

49.    The payments to investors were necessary to avoid detection of the fraud, retain existing investors and lure other investors into the scheme.

50.    The Debtor used the funds deposited for the purpose of new investments to continue operations, to pay earlier investors and to make other transfers.

51.     Due to the siphoning and diversion of new investments to repay earlier investors, the Debtor was able to stay afloat only by using the principal invested by some investors to pay other investors.

52.     Upon information and belief, the Debtor continued to solicit investments with the knowledge that it would not be able to pay those investments back from his business operations.

53.     Upon information and belief, during the pre-bankruptcy period the Debtor had limited earned income and limited sources of cash aside from new investments.

54.     Upon information and belief, every "investment" deepened the Debtor's insolvency.

55.     According to the Petitioning Creditors, beginning in September 2019, the Debtor issued post-dated checks to investors.

56.     According to the Petitioning Creditors, beginning in September 2019, Schultz asked for certain of the uncashed post-dated checks to be returned so that the Debtor could issue new checks for more money.

57.     The Debtor and Schultz engaged in a consistent pattern of issuing post-dated checks to investors or directing investors not to deposit checks until some future date.

58.     The Debtor and Schultz engaged in a pattern of replacing checks previously issued to investors with new checks and directing when such new checks could be deposited.

59.     The Debtor and/or Schultz continued to solicit new investors after September 2019.

60.     The Debtor and/or Schultz encouraged investors to roll over profits to other Jewelry Lot Sheets after September 2019 and promised additional returns.

### i.       The December Dinner Meeting at Calogero's

61.      According to the Petitioning Creditors, in late December 2019, the Debtor hosted a dinner meeting at Calogero's in Garden City, New York and requested his investors to attend.

62.      According to the Petitioning Creditors, more than 15 investors attended and paid for the December 2019 dinner meeting.

63.      According to the Petitioning Creditors, during the December 2019 dinner meeting, the Debtor represented to the investors that their money was safe and secure.

64.      According to the Petitioning Creditors, during the December 2019 dinner meeting, the Debtor represented to the investors that he had "tens of millions of dollars" in receivables due shortly from jewelry vendors.

65.      According to the Petitioning Creditors, during the December 2019 dinner meeting, represented to investors that they would all be repaid in full.

66.      Upon information and belief, in January 2020 following the dinner meeting, the Debtor issued checks totaling approximately seventy-four million dollars ($74,000,000) to repay the investors.

67.      According to the Petitioning Creditors, in January 2020, checks issued by the Debtor to investors were returned for insufficient funds.

### ii.      The January Dinner Meeting at Calogero's

68.      According to the Petitioning Creditors, on January 30, 2020, immediately after the Debtor's checks bounced, the Debtor sent investors text messages and called for an emergency meeting at Calogero's in Garden City, New York.

69.      According to the Petitioning Creditors, more than 40 investors attended the January 2020 dinner meeting.

70.     According to the Petitioning Creditors, during the January 2020 dinner meeting, the Debtor represented to investors that there was a "glitch" in his bank account and that he needed to remove an improper lien that had been placed on his account.

71.     According to the Petitioning Creditors, during the January 2020 dinner meeting, the Debtor assured his investors that their money was secure and that new checks would be issued.

### iii.     <u>The Bank Accounts</u>

72.     Upon information and belief, the Debtor engaged in banking transactions at defendants Chase Bank, Citibank, and Charles Schwab.

73.     Upon information and belief, defendant Filomena* may be holding property of the Debtor's bankruptcy estate at her account at Charles Schwab.

74.     Upon information and belief, the Debtor engaged in financial transactions at defendants Lincoln Investment, National Financial and Pershing.

75.     Upon information and belief, the Debtor may have authorized additional parties to exercise control over his accounts and/or may have transferred ownership of his accounts to third parties.

### iv.     <u>The Debtor's Consistent Statements to Investors</u>

76.     Since at least December 2019, the Debtor consistently represented to investors that he had access to all of their money and that they would be repaid in full.

77.     Upon information and belief, the Debtor represented to investors that the money was being held in his attorney's escrow account.

78.    Upon information and belief, the Debtor represented to investors that tens of millions of dollars were being held by his aunt in a custodial account at defendant Charles Schwab.

79.    Upon information and belief, the Debtor represented to investors that tens of millions of dollars were in his account at defendant Chase Bank but that the account was restrained improperly.

80.    Upon information and belief, the Debtor represented to investors that vendors owed him receivables of tens of millions of dollars and, once paid, investors would be paid.

81.    Upon information and belief, the Debtor directed Vito A. Palmieri, Esq. of Palmieri Law, PC, to write an accounts receivable collection letter on behalf of the Debtor.

82.    On or about January 6, 2020, Vito A. Palmieri, Esq. of Palmieri Law, PC wrote a letter on behalf of the Debtor to Creative Inc. concerning open receivables owed to the Debtor.

83.    According to the Petitioning Creditors, the Debtor sent the January 6, 2020 letter from Vito A. Palmieri, Esq. of Palmieri Law, PC to investors to allay any concerns they had about being paid.

84.    Upon information and belief, the Debtor directed Edward V. Sapone, Esq. of Sapone & Petrillo, LLP, to write him a letter about various judgments that were entered against the Debtor in January and February 2020.

85.    On or about March 17, 2020, Edward V. Sapone, Esq. of Sapone & Petrillo, LLP wrote a letter to the Debtor indicating that he was working on the judgments entered against the Debtor but that the Courts were closed.

86.     According to the Petitioning Creditors, the Debtor sent the March 17, 2020 letter from Edward V. Sapone, Esq. of Sapone & Petrillo, LLP to investors to allay any concerns they had about being paid.

87.     The Debtor directed and used his attorneys with malice and intent to defraud investors at a time when the Debtor knew that he did not have money to repay investors.

**C.     The Confessions of Judgment by the Debtor**

88.     On October 23, 2019, prior to the first dinner meeting at Calogero's, the Debtor, individually and on behalf of LNA Associates LTD. ("LNA"), signed an Affidavit of Confession of Judgment in favor of Last Chance Funding Inc. in the amount of "$461,445.55 less any payments made timely pursuant to the PSFRA dated October 23, 2019" plus certain fees and interest ("First Last Chance Affidavit").

89.     On October 23, 2019, prior to the first dinner meeting at Calogero's, the Debtor, individually and on behalf of LNA, signed an Affidavit of Confession of Judgment in favor of Green Capital Funding, LLC in the amount of "$1,049,300.00 less any payment made pursuant to the Future Receivables Sale and Purchase Agreement dated October 21, 2019" plus certain fees and interest ("Green Capital Affidavit").

90.     On October 23, 2019, prior to the first dinner meeting at Calogero's, the Debtor, individually and on behalf of LNA, signed an Affidavit of Confession of Judgment in favor of Last Chance Funding Inc. in the amount of "$461,445.55 less any payments made timely pursuant to the PSFRA dated October 23, 2019" plus certain fees and interest ("Second Last Chance Affidavit").

91.     On December 27, 2019, prior to the second dinner meeting at Calogero's, the Debtor, individually and on behalf of LNA, signed an Affidavit of Confession of Judgment in

favor of JBMML LLC in the amount of "$64,938,000.00 less any receivables delivered" plus certain additional costs ("<u>JBMML Affidavit</u>").

92.    On January 27, 2020, prior to the second dinner meeting at Calogero's, the JBMML Affidavit was docketed in the Supreme Court of the State of New York, County of Suffolk, under Index No. 601615/2020.

93.    On January 28, 2020, judgment was entered against the Debtor and in favor of JBMML, LLC in the amount of $69,866,040.21.

94.    On January 28, 2020, prior to the second dinner meeting at Calogero's, the First Last Chance Affidavit was docketed in the Supreme Court of the State of New York, County of Suffolk, under Index No. 601682/2020.

95.    On January 29, 2020, judgment was entered against the Debtor and in favor of Last Chance Funding Inc. in the amount of $354,598.78.

96.    On January 29, 2020, prior to the second dinner meeting at Calogero's, the Green Capital Affidavit was docketed in the Supreme Court of the State of New York, County of Suffolk, under Index No. 601835/2020.

97.    On January 31, 2020, judgment was entered against the Debtor and in favor of Green Capital Funding, LLC in the amount of $892,147.68.

98.    On January 31, 2020, the Second Last Chance Affidavit was docketed in the Supreme Court of the State of New York, County of Suffolk, under Index No. 601932/2020.

99.    On February 3, 2020, judgment was entered against the Debtor and in favor of Last Chance Funding Inc. in the amount of $354,730.29.

**D.    <u>The Transfer Of Real Property From The Altieri Family Trust</u>**

100.    Upon information and belief, the Debtor is a trustee of the Altieri Family Trust.

101.    On or about August 16, 2018, certain real property located at 142-25 Horace Harding Expressway, Flushing, New York 11367 ("Flushing Property") was sold for $1,580,000.00 pursuant to a deed dated August 16, 2018 and recorded on August 23, 2018 ("Flushing Property Deed").

102.    The Flushing Property Deed was signed by the Debtor, Adriana C. Chiaro and Arthur Altieri as Trustees of the Altieri Family Trust.

103.    Upon information and belief, the RP-5217NYC form was signed by the Debtor in connection with the sale of the Flushing Property.

104.    Upon information and belief, the Affidavit of Compliance with Smoke Detector Requirement for One- and two-Family Dwellings was signed by the Debtor in connection with the sale of the Flushing Property.

105.    Upon information and belief, the Debtor has an interest in the Altieri Family Trust.

106.    Upon information and belief, the Debtor caused the Altieri Family Trust to transfer funds from the sale of the Flushing Property to himself.

107.    Upon information and belief, the Debtor received funds from the sale of the Flushing Property.

**E.**    **Reservation of Rights**

108.    Plaintiff's investigation is ongoing and Plaintiff reserves the right to: (a) supplement the information regarding any pre- and post-petition transfers made to or for the benefit of the Defendants and/or the Unnamed Defendants; (b) any debt owed by the Defendants and/or the Unnamed Defendants to the Debtor; and (c) seek recovery of any such transfers.

**FIRST CLAIM FOR RELIEF**
**(Injunctive Relief)**

109. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "108" as if set forth fully herein.

110. Plaintiff seeks a preliminary injunction and permanent injunction preventing the Defendants from transferring, hypothecating, encumbering or otherwise disposing of property of the Debtor's bankruptcy estate.

111. Plaintiff seeks a preliminary injunction and permanent injunction preventing the Unnamed Defendants from transferring, hypothecating, encumbering or otherwise disposing of property of the Debtor's bankruptcy estate.

112. The Debtor's estate will suffer irreparable injury if the Defendants are permitted to retain, transfer, convey or otherwise dispose of property of the bankruptcy estate.

113. The Debtor's bankruptcy estate will suffer irreparable injury if the Unnamed Defendants are permitted to retain, transfer, convey or otherwise dispose of property of the bankruptcy estate.

114. To maintain the *status quo*, the balance of hardships weighs decidedly in favor of the granting of injunctive relief.

115. Plaintiff is likely to prevail on the merits of his claims based upon the allegations set forth herein and the facts of this case.

116. Pursuant to section 105 of the Bankruptcy Code, Bankruptcy Rule 7065, and Rule 65 of the Federal Rules of Civil Procedure, the Court may enjoin a party from proceeding with or continuing with, a course of conduct or practice which depletes, diminishes and/or effects property and/or diminishes the value of those assets or impairs the Plaintiff's recovery efforts.

117. The Defendants will not be harmed by the issuance of a temporary injunction

because the requested injunctive relief is a necessary step to return the parties to their position as of the Filing Date.

118.    The Unnamed Defendants will not be harmed by the issuance of a temporary injunction because the requested injunctive relief is a necessary step to return the parties to their position as of the Filing Date.

119.    By reason of the foregoing, Plaintiff is entitled to an order and judgment granting a preliminary and permanent injunction, plus costs and other fees, or such other amounts as to be proven at trial.

<div align="center">

**SECOND CLAIM FOR RELIEF**
**(Constructive Trust and Turnover Pursuant to 11 U.S.C. § 542(a))**

</div>

120.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "108" as if set forth fully herein.

121.    As of the Filing Date, the Debtor had a legal and/or equitable interest in any and all assets constituting property of his estate under section 541 of the Bankruptcy Code.

122.    Upon information and belief, the Defendants and/or the Unnamed Defendants are holding assets comprising property of the Debtor's bankruptcy estate.

123.    Upon information and belief, the Defendants and/or the Unnamed Defendants may have promised to accept property of the Debtor's bankruptcy estate for the Debtor's benefit.

124.    Upon information and belief, the Debtor relied on the promises of the Defendants and/or the Unnamed Defendants to accept property of his estate for his benefit.

125.    Upon information and belief, the Defendants and/or the Unnamed Defendants are acting as nominees for the Debtor and are holding assets comprising property of the Debtor's bankruptcy estate.

126.    Upon information and belief, the Defendants and/or the Unnamed Defendants

know they were holding assets comprising the Debtor's bankruptcy estate.

127.    Upon information and belief, any assets comprising the Debtor's bankruptcy estate being held by the Defendants and/or the Unnamed Defendants are being held in constructive trust for the Debtor.

128.    The Defendants and/or the Unnamed Defendants will be unjustly enriched if the Debtor is not deemed the equitable owner of all assets comprising the Debtor's bankruptcy estate as of the Filing Date that they are holding.

129.    Accordingly, under 28 U.S.C. § 2201, Plaintiff is entitled a judgment: (a) declaring that, as of the Filing Date, any and all assets comprising property of the Debtor's bankruptcy estate being held by the Defendants and/or the Unnamed Defendants, as well as any and all other property purchased, preserved and/or enhanced therefrom by the Defendants and/or the Unnamed Defendants, is property of the Debtor's bankruptcy estate under section 541 of the Bankruptcy Code; and (b) imposing an equitable lien on any such property for the benefit of the creditors of the Debtor's bankruptcy estate.

<u>**THIRD CLAIM FOR RELIEF**</u>
**(Turnover of Property of the Estate)**

130.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "108" as if set forth fully herein.

131.    As of the Filing Date, the Debtor had a legal and/or equitable interest in any and all assets constituting property of his estate under section 541 of the Bankruptcy Code.

132.    By reason of the foregoing, the Plaintiff is entitled to the entry of an order and judgment, under sections 541 and 542(a) and (e) of the Bankruptcy Code, against the Defendants directing the immediate turnover of any and all assets constituting property of the Debtor's bankruptcy estate under section 541 of the Bankruptcy Code.

**WHEREFORE**, the Plaintiff demands judgment on her claims for relief against the Defendants as follows:

      i.     on his First Claim For Relief, an order and judgment granting a preliminary and permanent injunction, plus costs and other fees, or such other amounts as to be proven at trial;

      ii.     on his Second Claim For Relief, under 28 U.S.C. § 2201, a judgment: (a) declaring that, as of the Filing Date, any and all assets comprising property of the Debtor's bankruptcy estate being held by the Defendants and/or the Unnamed Defendants, as well as any and all other property purchased, preserved and/or enhanced therefrom by the Defendants and/or the Unnamed Defendants, is property of the Debtor's bankruptcy estate under section 541 of the Bankruptcy Code; and (b) imposing an equitable lien on any such property for the benefit of the creditors of the Debtor's bankruptcy estate;

      iii.     on his Third Claim For Relief, under sections 541 and 542(a) and (e) of the Bankruptcy Code, an order and judgment against the Defendants directing the immediate turnover of any and all assets constituting property of the Debtor's bankruptcy estate under section 541 of the Bankruptcy Code; and

      iv.     for all costs, disbursements and expenses, including attorneys' fees, in connection with this action, together with such other, further and different relief as this Court may deem just and proper.

Dated: May 19, 2020
     Wantagh, New York

                **LaMONICA HERBST & MANISCALCO, LLP**
                Proposed Special Litigation Counsel to Plaintiff R. Kenneth Barnard, as Trustee

     By:     *s/ Joseph S. Maniscalco*
           Joseph S. Maniscalco, Esq.
           Holly R. Holecek, Esq.
           3305 Jerusalem Avenue, Suite 201
           Wantagh, New York 11793
           Telephone: (516) 826-6500